<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

—————————————————————————
:
TED LIGHT, et al.,                                                      :
                                                                               :
                            Plaintiffs,                                 :   Civil No. 08-2534 (FSH)
            v.                                                             :
                                                                               :   <u>**OPINION**</u>
NATIONAL UNION FIRE INSURANCE                       :
COMPANY OF PITTSBURGH, PA.,                          :   Date: December 11, 2008
                                                                               :
                            Defendant.                               :
—————————————————————————

<u>**HOCHBERG, District Judge**</u>:

        This matter comes before the Court upon Defendant's Motion to Dismiss pursuant to Fed.

R. Civ. P. 12(b)(6).  This Court has reviewed the motion without oral argument pursuant to Fed.

R. Civ. P. 78.

**I.        <u>Factual and Procedural Background</u>**

        Plaintiffs are the Commissioners of the Middlesex County Utilities Authority ("MCUA").

Both the MCUA and the Commissioners are covered by a Public Officials and Employment

Practices Liability Insurance Policy (the "Policy") issued by Defendant National Union Fire

Insurance Company of Pittsburgh, P.A. ("National Union").  The Policy insures against

Wrongful Acts performed by the Plaintiffs in their capacities as commissioners and officers of

the MCUA.  Specifically, the Policy establishes that National Union will both indemnify and

defend MCUA and the Commissioners from claims brought by third parties.  With respect to

indemnification, the Policy provides that National Union will:

1

pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages resulting from any Claim first made against the Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Company pursuant to the terms of this policy for any Wrongful Act of the Insured in the performance of duties for the Public Entity.

Pursuant to the Policy's Defense Provisions, National Union also agrees to "appoint an attorney and defend any Claim against the Insured alleging a Wrongful Act, even if such Claim is groundless, false or fraudulent; and pay on behalf of the Insured Defense Costs."[1]

---

[1] The Policy also includes the following pertinent definitions:

'Claim' means a judicial proceeding alleging a Wrongful Act that is filed against an Insured in a court of law or equity and which seeks Damages or other relief. Claim shall also mean an administrative proceeding alleging a Wrongful Act, provided an enforceable award of Damages can be made against an insured at the administrative proceeding.

'Damages' means a monetary judgment or settlement agreed to with the consent of the Company.

'Defense Costs' means reasonable and necessary fees, costs, and expenses incurred by the Company, or incurred by the Insured with the written consent of the Company ... resulting from the investigation, adjustment, defense and appeal of a Claim against any Insured; provided, however, that Defense Costs do not include salaries of employees or officers of the Company.

'Insured' means the Public Entity and:

(1) all persons who were, now are or shall be lawfully elected or appointed officials or employees while acting for or on behalf of the Public Entity;

(2) commissions, boards, or other units, and members and employees thereof, operated by and under the jurisdiction of such Public Entity and within an apportionment of the total operating budget indicated in the application for this policy;

(3) volunteers acting for or on behalf of, and at the request and under the direction of, the Public Entity;

(4) officials and employees of the Public Entity appointed at the request of the

2

This action arises out of a state court proceeding initiated in March 2007 by Spectraserv, Inc., a company with whom the MCUA had contracted for the construction of a sewage treatment facility owned and operated by the MCUA (the "Spectraserv Action").  Spectraserv alleged a variety of breach of contract and related tort claims against the MCUA, the individual Commissioners, and various engineering firms and individuals involved in the allegedly faulty design and construction of the facility.  The 11th Count of Spectraserv's Amended Complaint, the sole claim targeting the MCUA Commissioners individually, alleges primarily that the Commissioners "have willfully, deliberately and fraudulently conspired to hold Spectraserv," rather than the engineering firms associated with the project, liable for the errors, omissions and defects in the project's design and implementation.[2]

---

Public Entity to serve with an outside tax exempt entity.

'Wrongful Act' means any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or Employment Practices Violation by an Insured solely in the performance of duties for the Public Entity.

[2] Count 11, filed as a charge of civil conspiracy, sets forth in relevant part the following allegations:

373.  However, rather than pursuing breach of contract and professional negligence claims against R3M [the engineering firm involved in the project], Samuel and Antisell, and retaining a qualified, independent engineering firm to redesign the process, the Commissioners of the Authority, Fitamant and Samuel have willfully, deliberately and fraudulently conspired to attempt to hold Spectraserv and Liberty Mutual responsible for defects and deficiencies in R3M's design and engineering of the process improvements.

374.  Upon information and belief, because of their personal and political relationships with Samuel and Antisell, the Commissioners and Fitamant have willfully and deliberately refused to hold R3M, Samuel or Antisell accountable for the errors and omissions in R3M's design and engineering of the process improvements.

375.  Rather, the Commissioners, Fitamant and Samuel have, in every instance, deliberately mischaracterized the problems with the new sludge pasteurization process as

3

Upon being served with the Amended Complaint, the Commissioners notified National Union of the claims brought against them and requested the coverage provided by the Policy. The Commissioners sought both payment of their defense costs and indemnification for any damages owed in connection with the Spectraserv Action.  By letter dated February 8, 2008, National Union denied the Commissioners' request, citing coverage exclusions set forth in the Policy.  In particular, National Union relied on the "fraud, dishonesty, or criminal acts" and "breach of contract" exclusions which provide that:

> This policy does not apply to any Damages or Claim:
>
> (a) alleging fraud, dishonesty or criminal acts or omissions; however, the insured shall be reimbursed for the reasonable amount which would have been collectible under this policy if such allegations are not subsequently proven;...
>
> (m) Arising Out of breach of contract, except this exclusion shall not apply to any Claim alleging an Employment Practices Violation.

Importantly, the Policy expansively defines "Arising Out Of" to mean "originating from, having its origin in, growing out of, flowing from, incident to or having connection with, whether directly or indirectly."

In response to National Union's denial of coverage, Plaintiffs filed a Complaint on April 25, 2008 in Middlesex County Superior Court, which was removed to this Court on May 20, 2008.  Plaintiffs seek declaratory judgment concerning National Union's obligations under the Policy and also raise claims of breach of contract and breach of the duty good faith and fair

---

"construction defects" rather than "design defects," and have thereby attempted to shift responsibility for R3M's professional negligence to Spectraserv and Liberty Mutual.

376.  As a result of the Authority's politically motivated conspiracy to "scapegoat" Spectraserv for the errors and omissions in R3M's design and engineering of the process improvements, Spectraserv has incurred damages for which it now seeks recovery.

dealing.  Defendant moved to dismiss the Complaint in its entirety on July 24, 2008.

## II.   **Standard of Review**

To survive a Rule 12(b)(6) Motion to Dismiss, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965 (2007).  According to the Third Circuit, "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (internal quotations omitted) (citing *Twombly*, 127 S. Ct. at 1965).

Although a court does not need to credit a complaint's "bald assertions" or "legal conclusions," it must view all of the allegations in the complaint as well as all reasonable inferences that can be drawn therefrom in the light most favorable to the plaintiff. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citing *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The Supreme Court recently held that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S.Ct. at 1969.  In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider only the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the Plaintiff's claims are based on those documents. *Pension Guaranty Corp. v. White Consol. Indus.*, 998 F.2d

1192, 1196 (3d Cir. 1992).

## III.  <u>Analysis</u>

### A.  **Legal Standards Governing the Construction of Insurance Policies**

New Jersey law provides that when interpreting an insurance policy, a court should give the policy's terms their plain and ordinary meaning.  *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir.2006).  "If the policy language is clear, the policy should be interpreted as written, [but][i]f the policy is ambiguous, the policy will be construed in favor of the insured."  *Id.* (alterations in original; citation omitted); *see also Feszchak v. Pawtucket Mut. Ins. Co.*, 2008 U.S. Dist. LEXIS 29295, at *3 (D.N.J. April 8, 2008) (stating that ambiguities should be construed to "comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning.").

Insurance policy exclusions must be narrowly construed, and the burden is on the insurer to show that the claim falls within the exclusion. *Colliers Lanard & Axilbund*, 458 F.3d at 236 (citing *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 94 (1997)).  "Nonetheless, exclusions are presumptively valid and will be given effect if specific, plain, clear, prominent, and not contrary to public policy." *Id.* at 17 (internal citations omitted); *see also Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 155 N.J. 29, 41 (1998) (enforcing exclusion of claims "arising out of" employment relationship because the policy provisions were "clear and unambiguous" and not contrary to public policy).

An insurer's duty to provide coverage, including by providing a defense, is "generally determined by comparing the allegations in the complaint with the language of the policy."  *SL Industries, Inc. v. American Motorists Ins. Co.*, 128 N.J. 188, 197 (1992); *see also Vorhees v.*

6

*Preferred Mut. Ins. Co.*, 128 N.J. 165, 173-74 (1992).  In this case, Defendant argues that

comparing the allegations in the Spectraserv Action with the language of the Policy reveals that

Plaintiffs' claims are unambiguously barred by the Policy's "fraud, dishonesty, or criminal acts"

or "breach of contract" exclusions.  Plaintiffs contend, in response, that neither exclusion bars

their claims for coverage and that because National Union's obligations to indemnify and defend

the Commissioners are separate and independent, even if National Union were relieved of the

duty to indemnify the Commissioners, the duty to defend them remains.

### B.      Application of the "Breach of Contract" Exclusion

Count 11 of the Spectraserv Complaint sounds in tort, charging the Commissioners with

fraudulently and dishonestly misattributing the cause of the sewage treatment plant's malfunction

to construction rather than engineering problems.  Defendant argues, however, that Count 11

"arises out of" the alleged breach of contract that forms the heart of the Spectraserv Action and

that it has a substantial nexus with the contract at issue.  Plaintiffs argue that Count 11 challenges

actions that were "at best, 'independently tortious' and not related to the contract or arising out of

it as New Jersey courts have expansively interpreted that claim."

The Policy excludes coverage for any Damages or Claims "arising out of breach of

contract."  New Jersey courts have consistently upheld the validity of such exclusions.  *See North*

*Plainfield Bd. Of Ed. v. Zurich American Ins. Co.*, 2008 WL 2074013, * 9 (D.N.J. 2008); *see*

*also L.C.S., Inc. v. Lexington Ins. Co.*, 371 N.J. Super. 482, 493 (N.J. Super.A.D. 2004).  They

have also interpreted the phrase "arising out of" expansively, defining it "broadly in other

insurance coverage decisions to mean conduct 'originating from,' 'growing out of' or having a

'substantial nexus' with the activity for which coverage is provided." *Am. Motorists Ins. Co.*, 155

N.J. at 35-36 (listing New Jersey cases) (internal quotations omitted).

The Third Circuit has adopted a "but for" test for interpreting similar insurance policy exclusions. *Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 202-03 (3d Cir. 2004); *see also North Plainfield Bd. Of Ed.*, 2008 WL 2074013 at *9. In the current context, this test requires the Court to evaluate whether, but for the underlying breach of contract, the injuries for which the insured parties have been sued would have occurred.

Relying on these standards, courts have interpreted similar exclusion provisions to bar insured parties from collecting indemnification or defense payments for both breach of contract claims as well as related tort claims. Defendant cites *North Plainfield Bd. Of Ed. v. Zurich American Ins. Co.* as a prime example of how similar situations have been resolved in this district. As in the current case, the policy at issue in *North Plainfield* was issued by National Union and contained an almost identical "breach of contract" exclusion. National Union relied on that exclusion to deny a request for coverage for both breach of contract and tort claims, and the insured parties filed suit. The court upheld National Union's decision, finding that the tort claims at issue bore a substantial nexus with the underlying breach of contract claim "because they arise from the same essential facts and circumstances." *North Plainfield Bd. Of Ed.*, 2008 WL 2074013 at * 14. The court further held that coverage was barred because "the alleged injuries forming the basis of each of these claims would not have occurred but for the Board's alleged breach of the Project contracts." *Id.*; *see also Am. Motorists Ins. Co.,* 155 N.J. 29 (1998) (finding that "arising out of and in the course of employment" language in an insurance policy was unambiguous, enforceable, and precluded coverage for wrongful discharge claim that "unquestionably arose out of and in the course of employment, as did the essential factual

allegations on which the cause of action was predicated.").

Plaintiffs here are in substantially the same position as the insured parties in *North Plainfield*.  The underlying Spectraserv Action focuses primarily on the alleged breach of the construction contract entered into by the MCUA, as authorized by the Commissioners.  The sole claim against the Commissioners individually clearly has its origin in, flows from or has a connection to that contract and any breach thereof.  Indeed, the very defects about which the Commissioners were allegedly conspiring constituted the alleged breach of contract at issue.[3]

An application of the "but for" test yields a similar result.  But for the breach of contract alleged in the Spectraserv Action, the injuries allegedly perpetrated by the Commissioners would not have occurred.  Thus, the language of the "breach of contract" exclusion, read in accordance with other relevant language in the Policy and case law in this jurisdiction, provides that National Union is not obligated to pay damages owed by the Commissioners as a result of the Spectraserv Action.

### C.    Duty to Defend

Plaintiffs attempt to draw a distinction between the duty to defend and the duty to indemnify under the Policy.  While many insurance contracts do provide for a defense regardless of the ultimate determination of coverage, the instant Policy dos not obligate the insurer to tender a defense.  Plaintiffs' attempt to rely on *North Plainfield* in support here is misplaced, as it

---

[3] Plaintiffs' argument that this is an "exclusion applicable only to those who are direct parties to the underlying breach of contract" is unsuccessful.  Plaintiffs have presented no case law in support of such a limitation, and have, in fact, conceded that the Commissioners did authorize the execution of the underlying contract while acting in their official capacities.  In light of well-established precedent, the phrase "arising out of" here encompasses the actions taken by the Commissioners in relation to the contract with Spectraserv.

ignores a critical difference between the policies in each case.  Unlike the MCUA's Policy, the *North Plainfield* policy's "breach of contract" exclusion contained an important caveat, excluding damages "arising out of breach of contract, *however the Company shall defend such a Claim* in accordance with Insuring Agreement 2(a) subject to an aggregate limit of $100,000." (emphasis added).  In the MCUA Policy, in contrast, National Union neither limited the exclusion in that way nor separately obligated itself to tender a defense when the underlying claims arose from a breach of contract.[4]  As a result, pursuant to the terms negotiated in the instant Policy, National Union is under no obligation to provide the Commissioners with a defense or to pay their defense costs in this case.

In sum, the Commissioners' request for defense costs and insurance coverage for Count 11 of the Spectraserv Action falls squarely within the "breach of contract" exclusion in their Policy with National Union.[5]

_____

[4] Significantly, National Union did distinguish its duties to indemnify and defend in other enumerated exclusions, indicating a clear decision to tender a defense notwithstanding certain exclusions but not to tender a defense where the Policy is silent on the issue.  Specifically, Paragraph 5(b) of the Policy excludes Claims or Damages "seeking relief or redress in any form other than Damages, or attorney's fees, costs or expenses which the insured shall become obligated to pay as a result of an adverse judgment or settlement for a Claim seeking such relief; *however, the Company shall defend such a Claim in accordance with Clause 2, subject to a Policy Period aggregate limit or $100,000.*"  Similarly, Paragraph 5(k) provides for defense coverage even in the context of an "arising out of" exclusion, relieving National Union of Claims or Damages "Arising Out of a breach of fiduciary duty, responsibility or obligation in connection with employee benefit or pension plan, or to any amount due under any fringe benefit or retirement plan; *however, the Company will defend such a Claim but will have no obligation to furnish any benefits due or pay Damages.*"

[5] Because this application of the "breach of contract" exclusion fully disposes of Plaintiffs' request for coverage, it is unnecessary for the Court to consider or reach a decision on the parties' arguments concerning the application of the "fraud, dishonesty, or criminal acts" exclusion.  Regardless of whether it  alleges fraud, dishonesty or criminal acts within the purview of that exclusion, Count 11 arises out of the underlying alleged breach of contract and is

**IV.**     **<u>Conclusion</u>**

For the reasons given above, the Court grants Defendants' Motion to Dismiss in its

entirety.  An appropriate order will issue.

**<u>/s/ Faith S. Hochberg</u>**
Hon. Faith S. Hochberg, U.S.D.J.

---

therefore excluded from coverage and defense.